UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

WILLY CARL LYONS,

        Plaintiff,

   v.

D. BAUGHMAN,

        Defendant.
_____/

NO. CIV. S-01-412 LKK/KJM P

O R D E R

     Plaintiff is a black inmate who has filed a Section 1983 action against several prison officials alleging violation of his Eighth Amendment right against cruel and unusual punishment. The court previously granted defendants' motion for summary judgment except with respect to defendant Baughman. Pending before the court is plaintiff's motion for relief from the order, which has been brought pursuant to Rule 60(b). The court resolves the matter upon the parties' papers and after oral argument. For the reasons set forth below, the motion, which the court construes as brought pursuant to Rule 54(b), is granted in part and denied in part.

1

## I. Background[1]

This action stems from a riot at California State Prison, Sacramento ("CSP-Sac") on September 21, 1996. Plaintiff alleges that defendant Baughman, a correctional sergeant, told plaintiff that the rumors of an attack on black inmates by Hispanic inmates was unfounded and instructed plaintiff, who was a "shot-caller" in the Blood disruptive group, to inform black inmates that no attack would occur. After plaintiff complied, the Hispanic inmates attacked the blacks on the prison yard. Plaintiff alleges that he was attacked by other inmates in 1998 and 2000 (at Pelican Bay State Prison, "PBSP," and Salinas Valley State Prison, "SVSP," where he was subsequently transferred) in retaliation for his having conveyed false information prior to the 1996 riot. He maintains that prison officials were deliberately indifferent to his safety by failing to take steps to prevent these assaults, such as placing him in protective housing.

On March 15, 2004, the magistrate judge issued findings and recommendations recommending that summary judgment be granted as to defendants Hubbard, Rosario, Walker, Welch, Hill, Jourden, Stokes, Burpo, Redden, Saunders, and McGrath but denied as to defendant Baughman. The magistrate judge also found that while nominal and punitive damages were recoverable against defendant Baughman, compensatory damages were not, because plaintiff could

---

[1] A full recount of the facts of this case is set forth in the magistrate judge's findings and recommendations filed on March 15, 2004. Accordingly, the court recites only the essential details here.

not prove the heightened causation standard set forth in <u>Leer v. Murphy</u>, 844 F.2d 628, 633-34 (9th Cir. 1998).  On March 31, 2004, this court adopted the findings and recommendations in full.

On July 17, 2006, the court appointed the King Hall Civil Rights Clinic as attorney for plaintiff.  On April 4, 2007, plaintiff filed the instant motion pursuant to Rule 60(b), alleging the discovery of new evidence.  The new evidence at issue consists of deposition transcripts from two other cases, <u>Jeffers v. Gomez</u>, No. Civ. S-97-1335 JFM P, and <u>Butler v. Plexico</u>, No. Civ. S-97-0728 JFM, which shared several of the same defendants as those in this action and that also pertained to the 1996 riot.

## II. Standard

Plaintiff inappropriately filed this motion pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, or in the alternative, Rule 60(b)(6).  While neither provides a vehicle by which plaintiff may seek reconsideration of the court's previous order, the court ultimately construes plaintiff's motion as brought pursuant to Rule 54(b).

Although there is no "motion for reconsideration" as such specified in the Federal Rules of Civil Procedure, there are three means by which plaintiffs may achieve the effect of reconsideration.  First, plaintiffs may file a motion under Rule 60, as plaintiff has attempted to do here, which permits relief from judgments or orders under certain circumstances. A Rule 60(b) motion brought under the first three grounds for relief, which includes the discovery of new evidence that could not have been

3

1  obtained through due diligence, however, must be brought "not more
2  than one year after the judgment, order, or proceeding was entered
3  or taken."  Fed. R. Civ. Proc. 60(b)(2).
4      In his reply brief, plaintiff concedes, as he must, that his
5  motion under Rule 60(b)(2) is untimely.  The pertinent order here
6  was signed on March 31, 2004, more than three years before
7  plaintiff's instant motion was filed.  Nevertheless, plaintiff
8  maintains that his motion is permissible under the "catch-all"
9  subsection of Rule 60(b)(6), which permits relief for "any other
10 reason justifying relief from the operation of the judgment."  This
11 is incorrect.  If the ground asserted for relief falls under any
12 of the first three subsections, relief under the residual provision
13 is not available.  See Wesco Prods. Co. v. Alloy Auto Co., 880 F.2d
14 981, 983 (7th Cir. 1989) ("The first three clauses and the catchall
15 clause are mutually exclusive.").
16     Second, plaintiffs may seek reconsideration by way of Rule
17 59(e), which permits motions to alter or amend judgments "no later
18 than 10 days after entry of judgment."  Fed. R. Civ. P. 59(e).  In
19 this case, however, no judgment has been entered, because summary
20 judgment was only granted as to some (but not all) defendants.
21 Rule 59(e) "clearly contemplates entry of judgment as a predicate
22 to any motion."  Balla v. Idaho State Bd. of Corrections, 869 F.2d
23 461, 466 (9th Cir. 1989).  While plaintiff could have sought final
24 judgment with respect to the defendants whose motion for summary

4

judgment was granted,[2] and then moved to alter or amend under Rule 59(e), plaintiff has not taken this course.

Indeed, plaintiff need not do so, because of the third means by which reconsideration may be sought: Rule 54(b). Rule 54(b) states that "any order . . . which adjudicates . . . the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Local Rule 78-230(k) similarly provides that motions for reconsideration may be brought for "any motion . . . granted or denied in whole or in part." Here, the court's March 31, 2004 order only partially granted summary judgment. Where reconsideration of a non-final or interlocutory order is sought, the court has "inherent jurisdiction to modify, alter or revoke it." U.S. v. Martin, 226 F.3d 1042, 1048-49 (9th Cir. 2000). See also Amarel v. Connell, 102 F.3d 1494, 1515 (9th Cir. 1996); Credit Suisse First Boston Corp. v. Grunwald, 400 F.3d 1119, 1124 (9th Cir. 2005).

Generally, absent unusual circumstances, reconsideration is appropriate only where (1) the party presents the court with newly discovered evidence, (2) the court committed clear error or the

---

[2] Rule 54(b) states that "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." Fed. R. Civ. Pro. 54(b). See James v. Price Stern Sloan, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002) (explaining when final judgment may be sought under Rule 54(b)).

5

initial decision was manifestly unjust, or (3) there is an intervening change in controlling law.[3]  See Sch. Dist. No. 1J, Multnomah County, Oregon v. AC&S, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993); see also Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2003).  Nevertheless, because a previous decision constitutes the law of the case, a court should generally not upset one of its previous decisions absent a showing that it either represented clear error or would work a manifest injustice.  Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 817 (1988).

### III. Analysis

Plaintiff seeks reconsideration of the court's grant of summary judgment as to defendants Walker, Hubbard, Rosario, Burpo, Hill, Welch, Jourden, Redden, Saunders, and McGrath.  Plaintiff also seeks reconsideration of the court's grant of summary judgment to defendant Baughman on the issue of causation.  For the reasons set forth below, the court grants the motion for reconsideration with respect to defendant Walker but denies the motion with respect to the other defendants.  The court also vacates its previous order granting summary judgment to defendant Baughman on the issue of causation.

---

[3] While this standard has been applied most often in the context of Rule 59(e) and Rule 60(b) motions, it also provides guidance to Rule 54(b) motions.  See Doctor John's, Inc. v. City of Sioux City, IA, 456 F. Supp. 2d 1074, 1076 (N.D. Iowa 2006) ("While the standards for reconsideration of interlocutory orders may be less 'exacting' than the standards for reconsideration of final orders under Rules 59(e) and 60(b), . . . the court should 'look to the kinds of consideration under those rules for guidance.'") (internal citations omitted).

6

**A. New Evidence**

As an initial matter, defendants argue that plaintiff has not produced new evidence that could not previously have been obtained through due diligence. The "new evidence" at issue consists of deposition transcripts of defendants obtained in two other cases. There is little doubt that plaintiff could have obtained the same information contained in these deposition transcripts through discovery in his own case. Indeed, plaintiff propounded requests for admissions and interrogatories on each of the named defendants. The fact that he did not ask the same questions as those posed by plaintiffs in other cases does not mean that the answers were not obtainable through due diligence.

Nevertheless, the reality is that, as a pro se party, plaintiff had only limited access to legal resources and possessed limited legal knowledge. After counsel was appointed for plaintiff, however, more evidence was unearthed. While this evidence could have been obtained in the first instance, and the present motion denied on those grounds, the court finds that the interests of justice would be better served by resolving the motion on the merits. See Pena v. Seguros La Comercial, S.A., 770 F.2d 811, 814 (9th Cir. 1985) ("Whenever it is reasonably possible, cases should be decided on the merits").

**B. Deliberate Indifference**

A deliberate indifference claim exists where "the official knows of and disregards and excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he

7

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  The trigger for liability exists "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. at 836.

Here, the magistrate judge found that there was no evidence from which a finder of fact could infer that defendants (with the exception of Baughman) had the requisite actual knowledge of a substantial risk of serious harm.  One main reason that this element was missing is because there was no evidence to show that any of the defendants besides Baughman knew of plaintiff's position as a shot-caller.[4]  This fact is relevant to the deliberate indifference standard set forth in Farmer, which incorporates a subjective component requiring knowledge.  511 U.S. at 826 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment").

Knowledge of Lyons' role as shot-caller would greatly inform a prison official's appreciation of plaintiff's risk, both as to the likelihood and seriousness of the harm.  While defendants may have appreciated that the general risk for retaliation faced by misinformants, that risk would be substantiated, in plaintiff's case, by the fact that he was a shot-caller -- that he had a responsibility in the eyes of the other Blood-affiliated inmates

---

[4] The other defendant-specific reasons for why summary judgment was properly granted is set forth below.

8

but failed in his obligations as a leader to them. Being a shot-caller would also suggest that he had credibility with the Bloodline disruptive group, thereby making his misinformation particularly damaging.

In addition to not knowing plaintiff's status as a shot-caller, the other defendants lacked any other evidence upon which to substantiate plaintiff's fears. As stated in the findings and recommendations, plaintiff did not name those who had threatened him, nor did he claim that he feared retaliation from the Bloods when he communicated with the other defendants. Rather, he stated that he feared all black inmates who were housed in the relevant facility on the day of the riot. This was not enough from which these other defendants could appreciate a substantial risk of serious harm to plaintiff. See Davis v. Scott, 94 F.3d 444, 447 (8th Cir. 1996) (affirming grant of summary judgment to prison officials where plaintiff's fears of enemies in the general population was vague and unsubstantiated). A diffuse threat from multiple sources may be sufficient, see Farmer, 511 U.S. at 843, but the threat must nevertheless be substantial. Plaintiff fails to make that showing.

**1. Defendant Walker**

Although the deposition transcripts do not add any new information with respect to most defendants, the one exception is defendant Walker, who was CSP-Sac's B-facility Captain. Walker's deposition testimony indicates that he had "instructed Sergeant Baughman to go up, interview all the significant inmates,

9

1  influential inmates[,] Hispanics and blacks" to investigate rumors
2  of planned attacks by Hispanic gangs.  Pl.'s Mot., Ex. A., 69:25-
3  70:1.  Because Lyons was one of those interviewed by defendant
4  Baughman, it can be reasonably inferred that he knew of plaintiff's
5  status as a shot-caller (or, at the very least, as an influential
6  inmate).  Accordingly, the grant of summary judgment as to
7  defendant Walker on the grounds that he was unaware of plaintiff's
8  status was erroneous.

   **2. Defendants Hubbard, Rosario, & Burpo**

10      There is no new information with respect to any of these
11 defendants.  Plaintiff wrote to defendants Hubbard and Rosario in
12 December 1996 and February 1997, respectively, complaining of a
13 "continuous risk of being assaulted within the general population
14 by Black inmates" and of "risk within the general population within
15 the Department of Corrections."  F&R at 6-7.  Similarly, plaintiff
16 wrote to defendant Burpo in March 1997, stating that his "life is
17 and will continue to be at risk with the general population."  F&R
18 at 7.  Given the high level of generality, this was not sufficient
19 to put defendants on notice of a substantial risk of harm.  See
20 Davis, 94 F.3d at 447.

   **3. Defendants Welch & Hill**

22      Plaintiff concedes that summary judgment was properly granted
23 to defendant Welch, because he was probably not part of the cell
24 extraction team that removed plaintiff and transferred him to PBSP.
25 With respect to defendant Hill, who was undisputedly part of the
26 team, there is simply no new evidence.  As noted in the findings

and recommendations, plaintiff declined to discuss the basis of his fears with the cell extraction team. Accordingly, defendant Hill had no reason to know of a verifiable basis for plaintiff's fears.

**4. Defendants Jourden, Redden, Saunders, Stokes, & McGrath**

There is also no new evidence to suggest that summary judgment was inappropriately granted as to prison officials at PBSP and SVSP. As plaintiff concedes, "the deficiency of corroborating evidence can appropriately be attributed to a failure by CSP-Sac officials" (assuming, of course, that such a deficiency exists in the first place). Pl.'s Mot. at 16. In the face of a dearth of evidence substantiating plaintiff's concerns, these defendants had no reason to believe that plaintiff was in serious danger.

**C. Causation**

Failure to protect actions also require that the defendant's deliberate indifference be the actual and proximate cause of the plaintiff's injuries. Leer, 844 F.2d at 633. The court previously granted defendant Baughman's motion for summary judgment on the issue of causation for two reasons. First, plaintiff's PBSP attack was at the hands of an inmate who was not present at CSP-Sac on the day of the riot. Second, there was no evidence that even if defendant Baughman had appropriately documented information about the riot, that SVSP officials would have made a different housing classification. Upon reconsideration, the court finds that these were subjects of genuine dispute.

With regard to the PBSP attack, even though inmate Sanford was not present at CSP-Sac on the day of the riot, plaintiff alleges

11

that Stanford attacked him after talking to a group of Bloods on the yard.  It was foreseeable that plaintiff would be subject to attack by a Blood wannabe or Blood sympathizer.  Given defendant Baughman's knowledge of prison yard practices, a reasonable fact-finder could infer that he should have foreseen that an attack by a non-Blood was possible.

With regard to the SVSP attack, even though there was no evidence that SVSP officials disbelieved plaintiff's recount of his involvement in the CSP-Sac riot, there is at least a genuine dispute that had plaintiff's recount been documented with information in his central file, SVSP officials might not have made the same housing classification.  Accordingly, the court vacates its previous grant of summary judgment to defendant Baughman on the issue of causation.

### IV. Conclusion

In light of the foregoing, the court hereby orders as follows:

1. The motion is GRANTED in part and DENIED in part.

2. The court VACATES its previous grant of summary judgment to defendant Baughman on the issue of causation.

3. The court VACATES its previous grant of summary judgment to defendant Walker.

IT IS SO ORDERED.

DATED: May 9, 2007.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

12